UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., a Delaware corporation,<br><br>                              Plaintiff,<br>v.<br><br>UNITED RENEWABLE ENERGY CO., LTD., a Taiwanese corporation dba URECO; BANK OF AMERICA, National Association, a corporation,<br><br>                            Defendants. | Case No.: 23-CV-2353 TWR (DEB)<br><br>**ORDER DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR (1) TEMPORARY RESTRAINING ORDER, AND (2) ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>(ECF No. 3) |

Presently before the Court are Plaintiff Consolidated Electrical Distributors, Inc.'s *Ex Parte* application for (1) Order to Show Cause Why a Preliminary Injunction Should Not Issue and (2) Temporary Restraining Order ("TRO") (ECF No. 3, "*Ex Parte* Mot."); Plaintiff's Memorandum of Points and Authorities in support of its *Ex Parte* Motion (ECF No. 3-1, "Mem."); Defendant United Renewable Energy Co.'s ("URECO") Opposition to Plaintiff's *Ex Parte* Motion (ECF No. 15, "Opp'n"); Plaintiff's Reply to URECO's Opposition (ECF No. 16, "Reply"); URECO's Surreply in support of its Opposition (ECF No. 23, "Surreply"); and Bank of America's ("BOA") Response to *Ex Parte* Motion (ECF No. 14, "BOA Resp."). The Court held a hearing on January 25, 2024. (*See* ECF No. 24

(the "Jan. 25 Hearing").) Having reviewed the Parties' submissions and the relevant law, the Court **DENIES** the *Ex Parte* Motion.

## BACKGROUND

On December 28, 2020, Plaintiff entered into a non-exclusive Distribution Agreement with URECO, a Taiwanese corporation that manufactures and sells solar panels. (Compl. ¶ 8; *see also id.* Ex. 1 (Distribution Agreement).) The Distribution Agreement contained, among other things, a price protection provision that entitled Plaintiff to a rebate for the price difference on any products purchased from URECO within a specific time frame. (*Id*. ¶ 10.)

On January 1, 2022, the Parties amended the Distribution Agreement (the "First Amendment"). (*Id.* ¶ 13; *see also id.* Ex. 2 (First Amendment).) The First Amendment required Plaintiff to obtain a standby letter of credit to cover Plaintiff's credit line with URECO. (*Id.* ¶ 16.) Accordingly, Plaintiff obtained an Irrevocable Letter of Credit (the "LOC") from BOA for $35,000,000 on July 19, 2022. (*Id.* ¶ 17; *see also id.* Ex. 3 (LOC).)

In early 2022, the Parties grew concerned over the U. S. government's plan to impose tariffs on foreign solar panels. (Opp'n at 2.) Because these tariffs could create "a risk of great loss" to it, URECO sent a letter, dated April 12, 2022, to Plaintiff, in which URECO proposed higher prices for products that arrived or were arriving at U.S. ports after March 30, 2022, but agreed to give Plaintiff a rebate if the tariff did not go into effect and the right to cancel certain orders (the "April 12 Letter"). (Compl. ¶¶ 19–20; *see also id.* Ex. 4 (the April 12 Letter).) Specifically, the April 12 Letter provides:

1. Raise price of $0.10 usd/w (10 cents/watt) to all modules arrived and arriving to US ports after 2022/03/30.
2. URECO will return 40% rebate of the difference between the actual, if lower, and $0.10 usd/w (10 cents/watt).
3. If by any chance the tariff is over the raised price, 10 cents/watt, we will not return the raised price, 3% rebate and 0.25% marketing rebate back to CED Greentech since URECO is at a loss.
4. Any product on the water or arrived in the U.S cannot be canceled and will apply to this agreement until further clarification.

1   It is the last of these provisions that is central to the instant dispute. For its part, Plaintiff considers the April 12 Letter a "Second Amendment" to the Distribution Agreement. (Compl. ¶ 20.) Plaintiff takes the position that it agreed to the higher pricing in return for URECO's agreement that Plaintiff could cancel, without penalty, some open and future purchase orders for goods that URECO had not shipped to the United States and that had not left their point of origin. (Compl. ¶ 19; *see also* ECF No. 3-2 (Declaration of Daniel Fadden ("Fadden Decl.")) ¶ 16.) URECO, on the other hand, considers the April 12 Letter a "side agreement." (ECF 15-1 (Declaration of Chienping Hsieh ("Hsieh Decl.")) ¶ 4.) URECO states the terms of the April 12 Letter were in effect only during the period when the higher price was in effect and any cancellation right that might have existed under the April 12 Letter ended on June 6, 2022, when President Biden announced a two-year moratorium on solar panel tariffs. (Opp'n at 25.)

On December 11, 2023, URECO's counsel sent Plaintiff's counsel numerous invoices totaling $37,308,345.00 with twenty-one-day payment terms. (Compl. ¶ 28.) Plaintiff contends all the invoices received from URECO on that date concern orders canceled under the Second Amendment and URECO failed to deliver the materials described in the orders to Plaintiff. (*Id.*) To prove that it had the cancellation rights, Plaintiff points to email communications between Plaintiff's and URECO's agents between November 28, 2022, and January 10, 2023—after the supposed June 6, 2022 expiration of Plaintiff's cancellation rights—seeking cancellation of thirty containers of goods. (Fadden Decl. ¶ 22–23; *see also* Fadden Decl. Ex. 5.) URECO takes the position that even though it accepted the cancellation of thirty-nine (not thirty, as Plaintiff states) containers of goods on that occasion, it had refused to accept Plaintiff's request on others. (Hsieh Decl. ¶ 6.) In support, URECO has provided a June 13, 2023 email, in which it refused to accept a cancellation request from Plaintiff. (Hsieh Decl. Ex. 9.) URECO further clarifies that it never requested that Plaintiff take delivery of those thirty-nine containers and that it is not pursuing payment for them either. (Hsieh Decl. ¶ 6.) Instead, it seeks payment for two

///

hundred and twenty-eight containers of goods, valued at more than $37 million, that are sitting in a U.S. warehouse because Plaintiff has refused to accept delivery. (*Id.* ¶ 7.)

On January 5, 2024, believing URECO would imminently draw on the $35,000,000 LOC from BOA, Plaintiff filed the instant *Ex Parte* Motion to temporarily enjoin BOA from making any payments to URECO under the LOC. (Mem. at 7.) In the meantime, URECO agreed not to seek payment from BOA until January 26, 2024, after the hearing scheduled in this matter. (ECF No. 18 at 2.) BOA takes no position regarding the underlying contract dispute and submits to the Court's decision. (*See* BOA Resp. at 2.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes a trial judge to grant a TRO under certain circumstances "to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *See Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)). "A preliminary injunction [or temporary restraining order] . . . is not a preliminary adjudication on the merits[,] but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Id.* (alteration in original) (quoting *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)). The status quo in this context "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'" *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *Ramos*, 975 F.3d at 887 (quoting *All. for Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)).

/ / /

/ / /

> Under the original standard, plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.

*Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The Ninth Circuit employs an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Id.* (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)).

> Under this alternate standard, [the court] weigh[s] the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied.

*Id.* at 887–88 (internal quotation marks omitted) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)). In other words, "[a] preliminary injunction may be granted . . . where the moving party demonstrates either '(1) a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in [its] favor.'" *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (emphasis and second alteration in original) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Consequently, there are several limitations on when "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney," *see* Fed. R. Civ. P. 65(b), and "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." *See* Fed. R. Civ. P. 65(c). Further, "every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring

to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). Whether to "grant . . . a preliminary injunction is a matter committed to the discretion of the trial judge[,]" and that decision will be "reverse[d] only if that discretion is abused or the decision is based on an erroneous legal standard or clearly erroneous findings of fact." *See Sierra On-Line*, 739 F.2d at 1421.

## ANALYSIS

Through the instant *Ex Parte* Motion, Plaintiff seeks temporarily to enjoin BOA from making any payments to URECO under the LOC. (*See generally Ex Parte* Mot.; Mem.) The Court therefore analyzes Plaintiff's request under the *Winter* factors.

### I. Likelihood of Success on the Merits

Depending on its showing of irreparable harm, Plaintiff must demonstrate either a probability of success on the merits or the existence of serious questions going to the merits. *Grocery Outlet Inc.*, 497 F.3d at 951 (quoting *Sardi's Rest.*, 755 F.2d at 723. Plaintiff argues it is likely to succeed on the merits because URECO cannot demand payment from BOA since there is undisputed evidence that Plaintiff properly canceled orders under the terms of the April 12 Letter. (*Ex Parte* Mot. at 7–8.)

California Commercial Code § 5109(b) authorizes a court to enjoin the issuer of a letter of credit from honoring a demand for payment from a beneficiary if honoring the demand would facilitate fraud. *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1139 (9th Cir. 2005) (internal citation omitted). In the absence of fraud, an issuer must honor a letter of credit if the beneficiary has complied with its terms and conditions. *See generally Mitsui Mfrs. Bank v. Texas Com. Bank-Fort Worth*, 159 Cal. App. 3d 1051, 1055 (1984). Whether a beneficiary has complied with the presentation terms of a letter of credit implicates what

is known as the "independence principle." *San Diego Gas & Elec. Co. ("SDG&E") v. Bank Leumi*, 42 Cal. App. 4th 928, 933–34 (1996).  Under this principle, an issuer must honor a demand for payment that complies with the presentation terms of a letter of credit regardless of whether there is performance or non-performance of the underlying contract. *Id*.

URECO argues the Court cannot enjoin BOA because of the independence principle, and Plaintiff has not shown that the fraud exception applies to this case. (Opp'n at 8–15.) Although Plaintiff failed to discuss either of these doctrines in its *Ex Parte* Motion and only raised them for the first time in its Reply when responding to URECO's opposition,[1] (*compare* Mem., *with* Reply), the Court examines each of URECO's arguments in turn.

### A. *Independence Principle*

The independence principle is codified in California Commercial Code § 5103(d), which states:

> rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

The independence principle "is based on two policy considerations.  First, the issuing bank can assume no liability for the performance of the underlying contract because it has no control over making the underlying contract or over selection of the beneficiary.  Second, the letter of credit would lose its commercial vitality if, before honoring drafts, the issuing bank were obliged to look beyond the terms of the letter of credit to the underlying contractual controversy between its customer and the beneficiary." *Id*. (cleaned up).  Thus, the California Supreme Court had observed that the beneficiary of a letter of credit owes no obligations to the issuer and "literal compliance with the letter of credit's terms for

---

[1] The Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003).

payment is all that is required." *W. Sec. Bank v. Super. Ct.*, 15 Cal. 4th 232, 249 (1997). One of the implications of the independence principle is that unless a letter of credit references the underlying contract and explicitly creates a condition for honoring a demand for payment, a court cannot consider the underlying contract to interpret the presentation terms of a letter of credit. *Andy Marine, Inc. v. Zidell, Inc.*, 812 F.2d 534, 537 (9th Cir. 1987).

Under the independence principle, URECO contends the Court is unable to consider Plaintiff's allegation that URECO breached the underlying Distribution Agreement because there is no explicit language in the LOC tying it to the Distribution Agreement. (*See generally* Opp'n at 8–11.) Plaintiff, in turn, argues the Court may consider the merits of its dispute with URECO under the Distribution Agreement because the LOC conditions payment on the Parties' performance under the Distribution Agreement. (*See generally* Reply at 4–6.) In support of this argument, Plaintiff points to the second requirement of the LOC's section labeled "Undertaking Terms and Conditions" provided below:

> WE HEREBY ISSUE THIS IRREVOCABLE LETTER OF CREDIT NO. 68139776 IN [URECO'S] FAVOR, FOR THE ACCOUNT OF [PLAINTIFF], FOR UP TO AN AGGREGATE AMOUNT OF USD 35,000,000.00 AVAILABLE BY YOUR DRAFT(S) DRAWN ON US AT SIGHT, ACCOMPANIED BY THE FOLLOWING:
>
> 1. A COPY OF THE ORIGINAL LETTER OF CREDIT AND ALL AMENDMENTS THERETO, IF ANY.
>
> 2. A DATED STATEMENT SIGNED BY AN AUTHORIZED OFFICER OF THE BENEFICIARY ON BENEFICIARY'S LETTERHEAD READING AS FOLLOWS:
>
>> WE CERTIFY THAT THE AMOUNT DRAWN REPRESENTS <u>UNPAID ITEMS</u> OF CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC. AND/OR INDEBTEDNESS OWING BY CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., WHICH HAS BEEN PAID, BUT WHICH PA[Y]MENT, OR A PORTION THEREOF, WAS PAID WITHIN NINETY (90) DAYS OF A PETITION FILED BY OR AGAINST

CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC. UNDER THE BANKRUPTCY CODE OR OTHER INSOLVENCY STATUTE. COPY(IES) OF INVOICES MARKED 'UNPAID' ARE ATTACHED.

3. COPY(IES) OF INVOICES MARKED "UNPAID[."] THE COPY(IES) OF UNPAID INVOICES DATED PRIOR TO THE STANDBY LETTER OF CREDIT ISSUING DATE ARE ACCEPTABLE.

(Compl. Ex. 3 at 26 (emphasis added).) Under the independence principle, if URECO complies with the three requirements articulated in the "Undertaking Terms and Conditions" section of the LOC, BOA must honor its demand. *SDG&E*, 42 Cal. App. 4th at 933–34. Nonetheless, Plaintiff argues that because the LOC requires a signed statement from URECO certifying that the amount drawn represents Plaintiff's "unpaid" items, the LOC is tied to the underlying Distribution Agreement. (Reply at 5.) Accordingly, relying solely on *Steinmeyer v. Warner Consolidated Corporation*, 42 Cal. App. 3d 515 (1974), (*see* Reply at 4), Plaintiff requests the Court to determine whether there are unpaid items under the terms of the Distribution Agreement. (*Id*. at 5.)

The Court declines to follow *Steinmeyer*. In *Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 F.2d 1269 (1st Cir. 1990), the First Circuit read *Steinmeyer* as creating a special letter of credit rule. *Id.* at 1275. It observed that the California Supreme Court would be unlikely to "follow *Steinmeyer* insofar as it significantly weakens the principle of 'independence' of the letter of credit." *Id*. The Court agrees and finds persuasive the reasoning of *Export-Import Bank of the United States v. United California Discount Corp.*, 738 F. Supp. 2d 1047, 1056 (C.D. Cal.), *as amended* (Dec. 7, 2010), *aff'd*, 484 F. App'x 91 (9th Cir. 2012). In *Export-Import Bank*, UPS Capital Business Credit ("UPS") issued two letters of credit to the Ministry of Education of the Kingdom of Jordan (the "MOE") to support the underlying contract that UPS's debtor, Ashford International Inc. ("Ashford"), had with the MOE. *Id*. at 1049–52. UPS conditioned the issuance of its two letters of credit to MOE on Ashford obtaining two letters of credit of equal value for the

benefit of UPS, which Ashford got from United California Discount Corp. ("UCDC"). *Id.* UPS subsequently assigned its rights to all the instruments incident to Ashford's indebtedness to the plaintiff, Export-Import Bank of the U.S. ("EIB"). *Id.* When Ashford defaulted, UCDC refused to honor EIB's demand for payment because UCDC claimed that the letters of credit it had issued required EIB to show that Ashford had failed to perform under its underlying contract with the MOE. *Id.* The UCDC letters of credit provided:

> THE AMOUNT OF OUR DRAFT REPRESENTS FUNDS DUE U.S. AS A RESULT OF DRAWING OF OUR LETTER OF CREDIT BY ORDER OF ASHFORD INTERNATIONAL, INC. UNDER THE TERMS OF THE CONTRACT NO. (1/27/2000); LOAN NO. 3684–JO ISSUED BY MINISTRY OF EDUCATION–THE HASHEMITE KINGDOM OF JORDAN.

*Id.* at 1056. The court concluded that this "general reference to the contract between Ashford and the MOE [wa]s insufficient to create an explicit condition precedent for payment under the UCDC LOCs." *Id.* at 1057. Instead, in light of the plain language of the UCDC letters of credit and their purpose as standby letters of credit, EIB was entitled to draw upon the UCDC letters of credit when the MOE demanded payment on the letters of credit issued by UPS. *Id.* In reaching this conclusion, the court relied on *Andy Marine, Inc. v. Zidell, Inc.*, 812 F.2d 534 (9th Cir. 1987), in which the Ninth Circuit observed that, "[i]n the absence of clear evidence that the parties intended the letter to include nondocumentary conditions, it defeats the whole purpose of the letter of credit to examine the rights and wrongs of a contract dispute to determine whether the letter should be paid." *Id.* at 537.

Here, as in *Export-Import Bank*, the plain language of the LOC does not condition payment under the LOC to performance under the underlying contract. Instead, the plain language of the LOC provides that URECO is entitled to make a demand on the LOC when there are "unpaid items." (*See* Compl. Ex. 3 at 26.) As in *Export-Import Bank*, absent any evidence that the Parties intended to condition payment on non-performance under the Distribution Agreement, the Court need not delve into the merits of their underlying

contract dispute. Because none of the documents the Parties have submitted show that they intended to condition payment on a failure to perform the underlying contract, the Court finds that the LOC is independent of the Distribution Agreement. Accordingly, to succeed on the merits, Plaintiff must show that URECO's demand for payment on the LOC would amount to material fraud. *See Mitsui Mfrs. Bank*, 159 Cal. App. 3d at 1057.

### B. Fraud Exception

Under the fraud exception to the independence principle, Plaintiff must demonstrate that URECO's "demand for payment on the . . . LOC[ would be] . . . 'forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant.'" *Exp.-Imp. Bank*, 738 F. Supp. 2d at 1059 (quoting Cal. Com. Code § 5109(a)). "A material fraud occurs where the underlying contract deprives the beneficiary of even a colorable right to drawn upon the letter of credit." *Id.* (internal quotation marks omitted) (quoting *Ground Air Transfer, Inc.*, 899 F.2d at 1273); *see also Ground Air Transfer, Inc.*, 899 F.2d at 1273 (holding that a court may enjoin payment on letter of credit only when "the contract deprives beneficiary of even a *colorable* right to do so," "circumstances reveal that the beneficiary's demand for payment has absolutely no basis in fact," or "the beneficiary's conduct has so vitiated the entire transaction that legitimate purposes of the independence of the issuer's obligation would no longer be served" (internal quotation marks omitted)).

Plaintiff argues that any certification by URECO that the amount drawn on the letter of credit represents unpaid items under the Distribution Agreement would constitute material fraud because there are no outstanding invoices given Plaintiff's cancellation of the underlying orders pursuant to the cancellation provision in the April 12 Letter. (Reply at 6–7; Compl. ¶¶ 19–20.) URECO, on the other hand, claims the cancellation provision of the April 12 Letter ended on June 6, 2022, when President Biden announced the tariff moratorium. (Opp'n at 24–25; Hsieh Decl. ¶ 5.) Both the Parties have provided the Court with numerous emails and text messages supporting their respective versions of the story. Because the record evidences a genuine dispute as to whether Plaintiff's cancellation right

extended past June 6, 2022, the Court must conclude that URECO has a colorable claim. Further, Plaintiff conceded at oral argument that the invoices URECO submitted are genuine and relate to actual purchase orders from Plaintiff. Finally, Plaintiff's reliance on *Mitsui Manufacturers Bank* is unavailing because, unlike in this case, there was evidence in *Mitsui* that the beneficiary had provided an untruthful certification statement. 159 Cal. App. 3d at 1056. Because Plaintiff has failed to establish material fraud under the facts of this case, Plaintiff cannot establish any probability of success on the merits under the fraud exception to the independence principle.

## II.     Irreparable Harm

"The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (internal citation omitted). "[P]laintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal citation omitted). An injury is irreparable if a court cannot remedy the harm through monetary remedies. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm" (internal citation omitted)).

Plaintiff argues that monetary damages will be inadequate here for several reasons. First, there is no automatic recognition of foreign judgments in Taiwan. (Mem. at 9–10). Instead, "under Article 4-1 of the Taiwanese Compulsory Enforcement Act, a foreign judgment must receive an 'approving judgment' from a court in Taiwan to be enforceable." (*Id.* at 10.) "Consequently, if [Plaintiff] obtains a judgment in this action, it may be unable to execute on the judgment in Taiwan." (*Id.*) Even though Taiwan does not "automatically" recognize foreign judgments, however, it appears that it has a process for recognizing them. (*See id.* at 9–10.) Generally, the difficulty of bringing an action in a foreign jurisdiction, without more, does not constitute irreparable harm. *See e.g.*, *KMW*

*Intern. v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 16 (2d Cir. 1979) (concluding that "'unsettled situation in Iran' [wa]s simply insufficient to release any party from obligations under the letter of credit" and finding no irreparable harm where monetary damages would be adequate.); *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 473 (5th Cir. 1985) (observing that courts generally refuse to grant injunctive relief when it has been shown that foreign courts provide a legal remedy or, at worst, that access to foreign courts is speculative (collecting cases)). "[W]hile the need to resort to the legal processes of [a foreign jurisdiction] might well complicate [] enforcement efforts, … these complexities do not rise to the extraordinary level sufficient to warrant a finding of irreparable harm." *Fluor Daniel Argentina, Inc. v. ANZ Bank*, 13 F. Supp. 2d 562, 565 (S.D.N.Y. 1998). Plaintiff's speculation that it "may be" unable to execute judgment in Taiwan falls short of establishing that irreparable injury absent preliminary injunctive relief is likely, as opposed to merely possible. *See All. for the Wild Rockies*, 632 F.3d at 1131.

Second, in *Rockwell International Systems, Inc. v. Citibank, N.A.*, 719 F.2d 583 (2d Cir. 1983), the district court granted a preliminary injunction when it was "highly probable that the Hague Tribunal [would] refuse to accept jurisdiction over plaintiff's claims." (Reply at 8.) This case implicates a similar issue because Taiwan is not a signatory to Hague Convention on service of process or any other international agreement that governs service of process. (*Id.*) Even if Taiwan is not a signatory to the Hague Convention on service of process, however, there are other recognized methods for effectuating service in non-signatory countries. *See, e.g.*, Yvonne A. Tamayo, Catch Me If You Can: Serving United States Process on an Elusive Defendant Abroad, 17 Harv. J.L. & Tech. 211, 243 (2003).

Third and finally, Plaintiff contends that even though URECO's Taiwanese status was foreseeable, Plaintiff sought to avoid the risk of litigating in Taiwan by incorporating a forum selection clause in the Distribution Agreement, which provides California courts personal jurisdiction over URECO for any dispute between the Parties arising under the Distribution Agreement. (Mem. at 9.) The Distribution Agreement, however, is distinct

from the LOC. *See supra* Section I.A. In any event, Plaintiff assumed the risk of enforcing a money judgment in Taiwan because such transnational enforcement actions are a foreseeable consequence of relying on letters of credit when structuring transactions with an international company. *See Fluor Daniel Argentina, Inc. v. ANZ Bank*, 13 F. Supp. 2d 562, 565 (S.D.N.Y. 1998).

Ultimately, the Court concludes that Plaintiff's arguments are unavailing and that Plaintiff has failed to establish that monetary damages would not suffice to remedy any harm Plaintiff might suffer.

### III. Totality of the Circumstances

Because Plaintiff has failed to establish either serious questions going to the merits or a likelihood of irreparable harm, the Court finds that neither a temporary restraining order nor a preliminary injunction is warranted under either of the two *Winter* standards articulated by the Ninth Circuit. Although analysis of the remaining *Winters* is unnecessary in light of these conclusions, the Court further notes it would be inequitable to preclude URECO from obtaining the benefits of the LOC that it expressly bargained for with Plaintiff. *See SDG&E*, 42 Cal. App. 4th 928 at 934 ("One of the expected advantages and essential purposes of a letter of credit is that the beneficiary will be able to rely on assured, prompt payment from a solvent party; necessarily, a part of this expectation of ready payment is that there will be a minimum of litigation and judicial interference, and this is one of the reasons for the value of the letter of credit device in financial transactions." (cleaned up)).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

For reasons set forth above, the Court **DENIES** Plaintiff's *Ex Parte* Motion for (1) Order to Show Cause Why a Preliminary Injunction Should Not Issue and (2) Temporary Restraining Order (ECF No. 3).

**IT IS SO ORDERED.**

Dated: February 13, 2024

_____
Honorable Todd W. Robinson
United States District Judge

15

23-CV-2353 TWR (DEB)